NUMBER
13-02-424-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

JUAN FLORES, AS THE REPRESENTATIVE

OF THE ESTATE OF
ROBERTO FLORES, DECEASED,               Appellant,

v.

CANDELARIO ONTIVEROS, MELISSA ONTIVEROS

AND MED CARE EMERGENCY MEDICAL
SERVICES, INC.,       Appellees.

 

 

                     On appeal from the 92nd District
Court

                                        of
Hidalgo County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Castillo and Garza

 

      Opinion by Chief
Justice Valdez

 








Appellant, Juan Flores, as the representative of the
estate of Roberto Flores, deceased (ARoberto@), appeals from the judgment of the trial court
granting summary judgment in favor of appellees, Candelario Ontiveros, Melissa
Ontiveros, and Med Care Emergency Medical Services, Inc. (AMed Care@).   We
reverse the judgment of the trial court and remand.

Background

In 1995, Roberto, his nephew, Jorge Flores, and a
third party, Francisco Medrano, entered into a partnership agreement for the
purpose of operating an ambulance service known as Med Trans Ambulance.  After Roberto and Medrano made their initial
capital investment in Med Trans, Jorge allegedly began to deny the existence of
the partnership, claiming the other partners=
capital contributions were in fact loans only, and changed the name of the
company.  Roberto and Medrano sued Jorge
in 1996, seeking to recover damages for fraud, breach of contract, and breach
of fiduciary duty.  Medrano settled his
claims prior to trial and Roberto continued as the sole plaintiff.         

Following a trial before a jury, the court found in
favor of Roberto on all claims and fixed damages in the amount of $5,376,934.65
plus interest.  Jorge filed a notice of
appeal which this Court dismissed as untimely. 
Jorge then filed a petition for a bill of review in the trial
court.  The trial court granted the bill
of review, setting aside the jury verdict in the underlying case, declaring it
to be null and void, and reforming it so that Roberto took nothing and Jorge
was awarded his court costs.  

Roberto appealed the order granting the bill of
review to this Court, contending that Jorge abused the discovery process and
therefore had unclean hands, rendering him ineligible for equitable relief via
bill of review.  We agreed, concluding
that: 








Jorge=s conduct [was] unconscientious, unjust, marked by a
want of good faith, and violate[d] the principles of equity and righteous
dealing.  This is especially true given
that Jorge's basis for a bill of review is that Roberto had no evidence or
insufficient evidence to support his claims against Jorge.  The purpose of a bill of review is to prevent
"manifest injustice." A bill of review should not to be used as a
tool to undo justice.  

 

Flores v. Flores, 116 S.W.3d 870, 877 (Tex. App.BCorpus Christi 2003, no pet.) (citations
omitted).   We therefore held that the
trial court abused its discretion in granting Jorge a bill of review, and we
reversed its decision, rendering judgment denying the petition for bill of
review and reinstating the prior judgment in favor of Roberto.  See id. at 877-78.

At some point while the
Flores I case was proceeding, Roberto learned that Jorge had created a
new company, Med Care, with the help of his former legal counsel, Candelario
Ontiveros and his wife, Melissa Ontiveros. 
Jorge, Candelario, and Melissa had allegedly created Med Care as a way
to fraudulently transfer all of Med Trans= assets away from Jorge so that they could not be
reached by Roberto following a verdict in his favor.  Two days after the jury verdict in Flores
I awarded Roberto substantial damages, Roberto sued Candelario, Melissa,
and Med Care (collectively, Aappellees@) for fraudulent transfer pursuant to the Texas
Uniform Fraudulent Transfer Act (ATUFTA@), tortious interference, common law fraud, breach
of fiduciary duty, conspiracy and conversion. 
Roberto alleged that, given the jury verdict, he was a judgment creditor
of Jorge and Med Trans and, furthermore, that appellees had received virtually
all of the assets of Med Trans for little or no consideration specifically in
order to defeat Roberto=s ability to collect on any judgment against
Jorge.  

In 2002, while this
case was pending before the trial court, Roberto died and his brother, Juan
Flores, was subsequently appointed to administer his estate.  Juan continued the suit in place of Roberto.








Following the trial court=s granting of Jorge=s bill
of review and reversal of the jury verdict in Flores I, appellees in
this case moved for summary judgment by alleging the following:  (1) Roberto lacks standing in the case, (2)
his claim under TUFTA is barred by standing and the statute of limitations, (3)
his claim for tortious interference is barred by the statute of limitations and
a lack of evidence, (4) his claim for common law fraud is supported by no
evidence, and (5) his claims for breach of fiduciary duty, conspiracy and
conversion are barred by the statute of limitations.  The trial court granted appellees= motion for summary judgment, stating A[Appellees] are entitled to summary judgment as to
each and every basis for summary judgment on which they sought summary
judgment.@  Roberto
appeals on every ground raised in the motion.

Motion for Summary Judgment

We review the trial court's granting of a motion for
summary judgment de novo.  See
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Alejandro
v. Bell, 84 S.W.3d 383, 390 (Tex. App.BCorpus Christi 2002, no pet.).  Where the trial court does not state the
specific grounds upon which the summary judgment was granted, the reviewing
court must consider whether any theories set forth in the motion will support a
summary judgment.  State Farm Fire
& Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).  A summary judgment must be affirmed if any of
the theories advanced by the movant are meritorious.  Id.








In this case, appellees= motion asserted both traditional and no evidence
grounds for summary judgment, and we accordingly must review both.  In a traditional summary judgment, the movant
must establish that no genuine issue of material fact exists as to at least one
element of the non‑movant's claim and that the movant is entitled to
judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Cate v.
Dover Corp., 790 S.W.2d 559, 562 (Tex. 1990).  All doubts about the existence of a genuine
issue of a material fact are resolved against the movant.  Cate, 790 S.W.2d at 562; see also
Acker v. Tex. Water Comm'n, 790 S.W.2d 299, 301‑02 (Tex. 1990). 

In a no‑evidence motion for summary judgment,
the burden is on the non‑movant to present evidence raising a genuine
issue of material fact in support of the challenged elements.  Smith v. Mossbacker, 94 S.W.3d 292, 294
(Tex. App.BCorpus Christi 2002, no pet.).  As in traditional summary judgments, evidence
is viewed in the light most favorable to the non‑movant, disregarding all
contrary evidence and inferences, and if there is "more than a scintilla
of probative evidence to raise a genuine issue of material fact," then the
no‑evidence summary judgment should not be granted.  See Tex.
R. Civ. P 166a(i); see also Zapata v. The Children's Clinic, 997
S.W.2d 745, 747 (Tex. App.BCorpus Christi 1999, pet. denied). 

Standing

By their first claim in the motion for summary
judgment, appellees argue that Roberto lacks standing to pursue his claim.








In order to establish standing, a party must
demonstrate some interest peculiar to himself individually and not solely as a
member of the general public.  See
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555‑56 (Tex. 2000); Hunt
v. Bass, 664 S.W.2d 323, 324 (Tex. 1984). 
As a general rule, a person has standing to sue if (1) he has sustained,
or is immediately in danger of sustaining, some direct injury as a result of
the wrongful act of which he complains, (2) he has a direct relationship
between the alleged injury and claim sought to be adjudicated, (3) he has a
personal stake in the controversy, (4) the challenged action has caused the
plaintiff some injury in fact, either economic, ethic, recreational,
environmental, or otherwise, or (5) he is an appropriate party to assert the
public's interest in the matter, as well as his own interest.  See Rodgers v. RAB Investments, Ltd.,
816 S.W.2d 543, 546 (Tex. App.BDallas 1991, no writ); Assoc. Gen. Contractors,
Inc. v. City of Corpus Christi, 694 S.W.2d 581, 581‑82 (Tex. App.BCorpus Christi 1985, no writ).  

Here, appellees argue that Roberto lacks standing
because the monies he invested in Med Trans in order to establish his
partnership interest were Aessentially stolen from his parents= business known as Mission Salvage.@  They support
this assertion by citing testimony from Roberto=s
deposition in which he admits that his parents did not know that he used
Mission Salvage funds to invest with Jorge in Med Trans and that, had they
known, they would not have approved. 
Therefore, appellees allege, Roberto had no personal stake in the
controversy because the proceeds he utilized were taken without the owners= consent.  








We disagree. 
Appellees are making an Aunclean hands@ argument, but the doctrine of unclean hands Adoes not apply when a party is guilty of inequitable
conduct with regard to a transaction separate from the one in dispute.@  See Lazy
M Ranch v. TXI Operation, LP, 978 S.W.2d 678, 683 (Tex. App.BAustin 1998, pet. denied) (citing 1st Coppell
Bank v. Smith, 742 S.W.2d 454, 464 (Tex. App.BDallas
1987, no writ)).  Whether Roberto had his
parents= permission to invest the Mission Salvage funds in
Med Trans is thus irrelevant to the question of his standing to pursue this
case.  Roberto=s inability to collect the judgment owed to him will
cause him a direct injury regardless of how his original capital contribution
originated.  See Rodgers, 816
S.W.2d at 546.  Furthermore, Roberto=s claim against appellees will directly remedy that
injury.  See Wilson v. Andrews, 10
S.W.3d 663, 669 (Tex. 1999).   Therefore,
Roberto does have standing to sue, and the trial court erred by granting
summary judgment for appellees on this ground. 


Texas Uniform Fraudulent Transfer Act

In their second ground for summary judgment,
appellees argue that Roberto=s claim of fraudulent transfer under TUFTA is barred
by his lack of standing and the statute of limitations.

a.  Standing

In order to be entitled to recovery under TUFTA, a
party must achieve the status of a creditor, which is defined in the statute as
a person Awho has a claim.@  Tex.
Bus. & Com. Code Ann. ' 24.002(4) (Vernon 2002).  A claim is defined as Aa right to payment or property, whether or not the
right is reduced to judgment, liquidated, unliquidated, fixed, contingent,
matured, unmatured, disputed, undisputed, legal, equitable, secured, or
unsecured.@  Id. ' 24.002 (3). 
Appellees assert that because the trial court granted their bill of
review and reversed the jury verdict, instead awarding Roberto a take-nothing
judgment, Roberto is no longer a Acreditor@ under TUFTA and therefore lacks standing to pursue
his suit against them.  However, a
judgment in a second case based on the preclusive effects of a prior judgment
may not stand if the first judgment is reversed.  Scurlock Oil Co. v. Smithwick,
724 S.W.2d 1, 6 (Tex. 1986).  Roberto=s damages award, as reinstated by this Court in Flores
I, 116 S.W.3d at 872, is clearly a claim, rendering Roberto a creditor
under the statute with standing to pursue his claim.  Thus, the trial court=s previous ruling on summary judgment, to the extent
it was based on the bill of review=s effect of eliminating Roberto=s standing, must be reversed.

b. 
Limitations








TUFTA imposes a four‑year statute of
limitations for filing a claim.  See Tex. Bus. & Com. Code Ann. '
24.010(a) (Vernon 2002).  Its section on
limitations, however, allows for an exception to the tolling of limitations
under a statutory discovery rule: 

A cause of action with respect to a fraudulent
transfer . . . is extinguished unless the action is brought . . . within four
years after the transfer was made or the obligation was incurred or, if later,
within one year after the transfer or obligation was or could reasonably have
been discovered by the claimant.

 

Id. ' 24.010(a)(1).

Appellees assert in their motion for summary
judgment that the initial transfer from Jorge to Candelario occurred on February
6, 1996, and Med Care began operating on February 22, 1996, with these
funds.  Because Roberto filed his lawsuit
in this current case on March 8, 2000, more than four years after these
complained-of acts, appellees argue he has exceeded the statute of limitations
and his claim must be dismissed.  In
response, Roberto argues that section 24.010(a)(1) applies and the statute of
limitations had not tolled. 








Parties alleging the defense of limitations bear the
burden to prove their affirmative defense by conclusively establishing the
applicability of the statute of limitations, including the date on which the
limitations commenced.  Provident Life
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 220 (Tex. 2003).  Here, according to the statute, limitations
began to run either on the date of the transaction or on the date Roberto knew
or should have known of the transaction. 
See Tex. Bus. & Com.
Code Ann. ' 24.010(a)(1).  
When a plaintiff knew or should have known of an injury is generally a
question of fact.  Cadle Co. v. Wilson,
136 S.W.3d 345, 352 (Tex. App.BAustin 2004, no pet.).  Only if reasonable minds could not differ
about the conclusion to be drawn from the facts in the record may the onset of
the limitations period be determined as a matter of law.  See Childs v. Haussecker, 974 S.W.2d 31,
44 (Tex. 1998).

We have reviewed the evidence submitted to the trial
court and conclude that nothing in the record indicates when Roberto discovered
or should have discovered the allegedly fraudulent transfers to appellees.  Roberto=s pleadings and appellate brief indicate that he
discovered that Jorge had fraudulently transferred the assets and partnership
contributions in Med Trans to appellees at some point during the prosecution of
Flores I.  This means that Roberto=s discovery could have occurred at any time between
his filing of the first lawsuit against Jorge in 1996 and his filing of the
second lawsuit against appellees in 2000, given that the prosecution of the
first suit was still ongoing when the second suit was filed.  Therefore, Roberto may or may not have filed
the second suit within a year of his discovery of the fraud.

As there is no direct evidence of the exact date
from which the statute of limitations should toll, and the available evidence
provides a range of potential dates, we conclude that appellees did not satisfy
their burden as summary judgment movants to conclusively establish the date on
which the limitations period commenced.  See
Provident Life & Accident Ins., 128 S.W.3d at 220.  This remains an unresolved question of fact, see
Cadle Co., 136 S.W.3d at 352, and accordingly, the trial court erred by
granting summary judgment in favor of appellees on this ground.  See Cate, 790 S.W.2d at 562.

Tortious Interference 








Appellees argue in their third claim for summary
judgment on both no evidence and traditional grounds that Roberto=s claim of tortious interference with an existing
contract must fail for the following reasons: (1) the statute of limitations
bars his claim, (2) there is no evidence of a valid enforceable contract
between Jorge and Roberto, (3) there is no evidence of the elements of a valid
partnership agreement between Jorge and Roberto, (4) there is no evidence of causation
by appellees, and (5) there is no evidence of any existing contracts between
Med Trans and its employees, customers, suppliers or government entities.  

a. Limitations 

Appellees argue that Roberto=s claim for tortious interference is barred by the
statute of limitations.  In his response,
Roberto argues that the discovery rule should apply to this claim.  

A claim for tortious interference is governed by a
two-year statute of limitations. Harrison v. Bell, 99 S.W.3d 163, 167
(Tex. App.BCorpus Christi 2002, no pet.); see Tex. Civ. Prac. & Rem. Code Ann. ' 16.003(a) (Vernon 2002). The rule provides that
limitations will begin to run from the date the plaintiff discovers or should
have discovered, in the exercise of reasonable care and diligence, the nature
of the injury.  Childs, 974 S.W.2d
at 40.  








As discussed above, the evidence establishes a range
of potential dates on which Roberto may have discovered the purportedly
fraudulent transactions.  Thus, the
determination of the date from which limitations must run remains an unresolved
question of fact, and the trial court could not have properly granted summary
judgment on this ground.  See Cadle
Co., 136 S.W.3d at 352; Provident Life & Accident Ins., 128
S.W.3d at 220.[1]  

b. 
Partnership Agreement

Appellees argue that the trial court=s order granting the bill of review in Flores I
establishes that Roberto had no right to recover on the alleged agreement
between them.  However, as previously
noted, this Court=s opinion in Flores I had the effect of
reversing the bill of review.  See
Flores, 116 S.W.3d at 877-78.  To the
extent the order granting summary judgment was based on the bill of review
granted by the trial court, it must be reversed.  See Scurlock Oil, 724 S.W.2d at
6. 

Appellees also argue in their motion for summary
judgment that there was no meeting of the minds with regard to the partnership
agreement between Jorge and Roberto. 
Specifically, they cite to the purported failure of the partners to
agree upon (1) the initial capital investment, (2) control over bank account
and expenses, (3) dissolution procedures, (4) buyout procedures, and (5)
principal place of business.  








In the evidence attached to Roberto=s response to appellee=s
motion is an unsigned copy of the partnership agreement; according to testimony
by a former Med Trans employee at the Flores I trial, Jorge
destroyed the only signed copy of this agreement.  However, despite the lack of a signed copy of
the partnership agreement, the jury resolved that a partnership agreement must
have existed, and therefore, collateral estoppel applies. When asserted in a
second action against a party who was actually a party in the first action, the
doctrine of collateral estoppel bars relitigation of fact issues that were
fully and fairly litigated and that were essential to the prior judgment.  State & County Mut. Fire Ins. Co. v.
Miller, 52 S.W.3d 693, 696-97 (Tex. 2001) (per curiam).  Here, Roberto was a party to the first suit
and the finding of a valid partnership agreement between himself and Jorge was
crucial to establish his entitlement to damages from Jorge.             Furthermore,
the elements that appellees complain about are not themselves indicative of a
lack of a partnership agreement.  In
order to establish a partnership or joint venture, a plaintiff must show (1) a
community of interest in the venture, (2) an agreement to share profits, (3) an
agreement to share losses, and (4) a mutual right or control or management of
the enterprise.  See Schlumberger
Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997).  Details regarding control and management are
not necessary so long as these basic requirements are satisfied.  See Park Cities Corp. v. Byrd, 534
S.W.2d 668, 672 (Tex. 1976).  Through
Roberto=s deposition testimony and the copy of the
partnership agreement, we determine that these basic requirements were in fact
met.  Furthermore, we have reviewed the
points in Roberto=s deposition testimony which appellees assert
demonstrate evidence of a lack of meeting of the minds on various issues.  We do not find that this testimony indicates
there were major disagreements between the partners on questions of initial
capital investments, management, and control. 
Appellees therefore cannot assert that there was no enforceable
partnership agreement between Jorge and Roberto.

c.  Causation

Appellees also argue in their motion for summary
judgment that the causation element of tortious interference has not been
established.  








The elements of tortious interference with an
existing contract are (1) an existing contract subject to interference, (2) a
willful and intentional act of interference with the contract (3) that
proximately caused injury, and (4) actual damages or loss.  Prudential Ins. Co. of Am. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). 
Appellees attack the causation element of this test, arguing that A[Roberto]=s own testimony establishes that [appellees] did not
do anything to induce [Jorge] to breach his agreement with [Roberto],@ because Jorge had already breached the partnership
agreement and caused Roberto=s damages before engaging in any subsequent
transfers of the partnership funds and company assets with appellees.  

With this argument, appellees attempt to misdirect
this Court.  Roberto is not alleging that
appellees caused Jorge to breach his partnership agreement; instead, he is
claiming that, following this breach, appellees then colluded with Jorge to
hide the funds Jorge himself had put at risk because of that initial breach.  In Roberto=s
deposition testimony, we can see he has presented adequate evidence to raise a
question of fact as to whether appellees assisted or otherwise caused Jorge to
engage in the fraudulent transfer of Med Trans funds.  Therefore, summary judgment could not be
properly granted on this ground.

d.  Existing
Contracts








Finally, appellees argue that there is no evidence
that there were any existing contracts between Med Trans and its employees, customers,
suppliers, or government entities or municipalities, and therefore Roberto has
failed to establish the first element of tortious interference, i.e., an
existing contract subject to interference. 
See id. at 77.  In support
of this claim, appellees point to Roberto=s deposition testimony in which he discusses the
customers, suppliers, and employees of Med Trans but admits that he never saw
any written contracts involving any of these parties.  

While some types of contracts do have to be in
writing to be enforceable, there is no blanket requirement that all contracts
for employees, suppliers, or customers be in writing in order for a tortious
interference claim to be substantiated.  See
id. at 83 (concluding there was evidence of tortious interference based in
part on interference with an oral agreement). 
Roberto=s testimony indicates there were working contractual
relationships between Med Trans and these entities.  Appellees, other than pointing out the lack
of written contracts in the evidence, have provided no evidence to dispute
this.  Therefore, Roberto met his burden
to defeat appellees= no evidence claims, and the trial court erred in
granting summary judgment on these grounds. 


Fraud

Appellees assert in their fourth ground for summary
judgment there was no evidence to support Roberto=s
claim for fraud.   

The elements of common‑law fraud are as
follows: (1) a material representation was made; (2) the representation was
false; (3) when the representation was made, 
the speaker knew it was false or made it recklessly without any
knowledge of the truth and as a positive assertion; (4) the representation was
made with the intention that it be acted upon by the other party; (5) the party
acted in reliance upon the representation; and (6) the party suffered injury.  Johnson & Higgins v. Kenneco
Energy, 962 S.W.2d 507, 524 (Tex. 1998). 
Appellees specifically contend that there is no evidence that a material
representation was made or that Roberto suffered injury as a result of any
fraudulent act. 

a. Material Misrepresentation








We first address whether there was in fact a
material misrepresentation by appellees. 
This is not necessarily an element that requires an affirmative
representation; in some cases, fraud may be found where there has been a
material omission or failure to speak.  See
Harrison v. Bass Enters. Prod. Co., 888 S.W.2d 532, 536 (Tex. App.BCorpus Chrsiti 1994, no writ).  A material omission is typically considered
an element of a claim for fraud when there is a duty to speak.  See id.  

Appellees simply assert there was no
misrepresentation made to Roberto.  We
agree that the available evidence supports this assertion.  However, appellees have failed to address the
possibility that their failure to inform Roberto about the transfer of Med
Trans= assets could still constitute a material omission,
given that Roberto was a judgment creditor to the funds they were allegedly
appropriating.  By producing testimonial
evidence showing that appellees are in a fiduciary relationship with Med Trans
by acquiring all of its assets, and therefore stand in a fiduciary relationship
with Roberto as a partner of Med Trans, we conclude that Roberto has produced
at least a scintilla of evidence sufficient to raise a genuine issue of
material fact regarding fraud.  We also
note that appellees have not contested Roberto=s
assertion that they owe him a fiduciary duty. 
Appellees are not entitled to a no-evidence summary judgment on this
ground.  See Smith, 94 S.W.3d at
294.

b.  Injury








Appellees argue that there is no evidence that they
proximately caused injury to Roberto Asince [Roberto] admits that [Jorge] committed fraud
long before his involvement with the Ontiveroses and Med Care . . . .@  Roberto,
however, is complaining about being injured by a separate, second act following
Jorge=s initial act of fraud, and his petition makes it
very clear he is complaining that appellees= acts
proximately caused him this second injury. 
Appellees= allegations, by focusing solely on Jorge=s first act of malfeasance, do not respond to
Roberto=s claim and therefore provide no valid grounds for
summary judgment.  We conclude the trial
court erred by granting summary judgment on this ground.

Conclusion

We reverse the trial court=s order granting summary judgment in favor of
appellees and remand to the trial court for further proceedings.

 

 

                                                                                                          Rogelio
Valdez,

Chief Justice

 

  

Memorandum Opinion delivered and filed

this 17th day of November, 2005.











[1] This analysis also holds true for
appellees= statute of limitation arguments in
response to Roberto=s claims of breach of fiduciary
duty, conspiracy, and conversion.  See
Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988) (holding that breach of
fiduciary duty justified using discovery rule to toll limitations); In re
Estate of Herring, 970 S.W.2d 583, 586 (Tex. App.BCorpus Christi 1998, pet. denied) (Athe discovery rule applies to
conspiracy to commit fraud@); Hofland v. Elgin‑Butler Brick Co., 834
S.W.2d 409, 414 (Tex. App.BCorpus Christi 1992, no writ) (applying discovery rule in
conversion cases involving fraud and deceit). 
The trial court could not have properly granted summary judgment based
on limitations on any of these three grounds.