TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00271-CV






Cadle Company and Cadleway Properties, Inc., Appellants


v.


William T. Wilson and David Greenfield, Appellees






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 194,369-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING





O P I N I O N




 Cadle Company and Cadleway Properties, Inc. (collectively, Cadle) appeal from
summary judgment in favor of William T. Wilson and David Greenfield. Cadle alleged that Wilson
and Greenfield perpetrated a fraudulent transaction to protect Wilson's property from Cadle's
collection efforts pursuant to a judgment it held against Wilson. Cadle argues that summary
judgment was improper. For the reasons that follow, we affirm the judgment of the trial court.


BACKGROUND

 Cadle recovered a $90,000 judgment against Wilson in January 1996. (1) In April 1997,
Cadle took a post-judgment deposition of Wilson, who disclosed that approximately one year earlier,
Greenfield had purchased from First State Bank of Keene a promissory note on which Wilson was
obligated. (2) As collateral for that note, Wilson had pledged to Greenfield his membership interest
in William T. Wilson, Attorney & Counselor at Law, Ltd., a limited liability corporation formed by
Wilson for the conduct of his legal practice. (3) Wilson explained to Cadle at the deposition that
Greenfield was not in the business of buying bank notes, but was rather an acquaintance of Wilson's
who had purchased the bank note as a favor so that Wilson could negotiate more favorable terms on
which to pay the debt. (4)

 Cadle apparently took no further action to collect the judgment from Wilson until
February 2002, when it deposed Wilson for a second time. In this deposition, Wilson disclosed that
he was not current on payments to Greenfield, had not been so for several years, and that Greenfield
had made no effort to collect on the loan. Cadle then applied to the district court in April 2002 for
turnover relief under the original 1996 judgment against Wilson, arguing that the note pledged to
Greenfield was a sham and that the membership interest should therefore be turned over to Cadle. 
See Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1) (West 1997). Wilson denied the allegation
and urged that because Greenfield's rights were being adjudicated as well, it would be improper to
proceed without Greenfield as a party. After a hearing on the matter, the trial court denied turnover
relief in June 2002.

 Cadle initiated another suit in September 2002, naming both Wilson and Greenfield
as defendants. This new suit sought first to set aside the transfer of the membership interest as
fraudulent. See Tex. Bus. & Com. Code Ann. § 24.008 (West 2002). It also sought a declaratory
judgment that the transaction between Greenfield and Wilson was void, plus attorney's fees. See
Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). Finally, this new proceeding again
requested that the membership interest be turned over to Cadle because of the allegedly fraudulent
nature of Wilson's and Greenfield's arrangement. See id. § 31.002(b)(1).

 After a hearing on evidentiary motions, the trial court granted summary judgment in
favor of Wilson and Greenfield. The court gave no specific grounds for its decision. Cadle argues
on appeal that summary judgment was improper because Wilson and Greenfield should have been
estopped from making certain res judicata arguments, and because there is a genuine issue of
material fact about when the statute of limitations should run on its various claims. Additionally,
Cadle contends that the trial court erred in sustaining certain evidentiary objections raised by Wilson
and Greenfield.

DISCUSSION

Standard of review

 The standard for reviewing a summary judgment is whether the moving party carried
its burden of showing that there is no genuine issue of material fact and that judgment should be
granted as a matter of law. Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001); see also Tex. R. Civ. P.
166a(c). Because the propriety of a summary judgment is a question of law, we review the trial
court's decision de novo. Castellow v. Swiftex Mfg. Corp., 33 S.W.3d 890, 894 (Tex. App.--Austin
2000, no pet.) (citing Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994)). In reviewing a
trial court's summary judgment, we resolve all doubts against the movant, and we view the evidence
in the light most favorable to the nonmovants. Shah, 67 S.W.3d at 842. When a trial court's order
granting summary judgment does not specify the grounds relied upon, the reviewing court must
affirm summary judgment if any of the summary-judgment grounds are meritorious. Bradley v. State
ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).


Statutory fraudulent transfer and the "discovery rule"

 The Texas Uniform Fraudulent Transfer Act (TUFTA) imposes a four-year statute
of limitations for filing a claim. See Tex. Bus. & Com. Code Ann. § 24.010(a)(1) (West 2002). It
is undisputed that the Wilson-Greenfield transaction occurred sometime in 1996 and that Cadle's
claim was not filed until September 2002, falling outside of TUFTA's four-year statute of
limitations. Nonetheless, Cadle argues that its claim is not barred because TUFTA explicitly allows
for the discovery-rule exception to the statute of limitations:


(a) [A] cause of action with respect to a fraudulent transfer or obligation under this
chapter is extinguished unless action is brought:


 (1) under Section 24.005 (a)(1) of this code, within four years after the transfer
was made or the obligation was incurred or, if later, within one year after
the transfer or obligation was or could reasonably have been discovered
by the claimant.



Id. (emphasis added). Cadle's argument is that although it discovered the transfer in 1997, the
statute's discovery-rule exception defers accrual of its cause of action until Cadle discovered the
fraudulent nature of the transaction, which was not until the second Wilson deposition in 2002. If
the statute refers to discovery of the transfer itself, not its fraudulent nature, Cadle's claim is barred
because it brought suit more than one year after it first learned of the transaction in 1997; if Cadle
is correct, then the claim was brought within the statutory discovery-rule exception and is not barred.

We initially note that section 24.010 is not simply a limitations provision, but is
specifically titled "Extinguishment of Cause of Action." See id. § 24.010 (emphasis added). Such
language indicates that the limitations provision of TUFTA is intended to be strictly construed and
that section 24.010 is technically a statute of repose, rather than a statute of limitations. See id. A
statute of limitations is a procedural device operating as a defense to limit the remedy available from
an existing cause of action; a statute of repose creates a substantive right to be free from liability
after a legislatively determined period. Duran v. Henderson, 71 S.W.3d 833, 837 (Tex.
App.--Texarkana 2002, pet. denied). While statutes of limitations operate to bar enforcement of a
right, a statute of repose takes away the right altogether. Id. at 838. The provision in section 24.010
"bars the right and not merely the remedy." See Uniform Fraudulent Transfer Act § 9, 7A-2 U.L.A.
266, 359 cmt. (1999).

 It is clear from the text of the statute that the legislature has chosen to preserve
application of the discovery rule to some extent within the provisions of TUFTA. The statute under
which Cadle sued defines a fraudulent transfer as one made "with actual intent to hinder, delay, or
defraud any creditor of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (West 2002). 
Thus, the element making a transfer "fraudulent" is the state of mind of the transferor. See id. The
discovery rule preserved in section 24.010(a)(1) defers the accrual of a plaintiff's cause of action
until its discovery of the "transfer," which clearly refers to the "fraudulent transfer" in subsection
(a). See id. § 24.010(a)(1). But, we disagree with Cadle that its one-year limitations period did not
begin to run until it suspected that the transfer was fraudulent in 2002. 

 The discovery rule defers the accrual of a cause of action until the plaintiff knew or,
through the exercise of reasonable diligence, should have known of the facts giving rise to the cause
of action. Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734 (Tex. 2001); Computer Assocs.
Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455-56 (Tex. 1994). The supreme court has limited the
application of the discovery rule to circumstances in which the nature of the injury is inherently
undiscoverable and the evidence of the injury is objectively verifiable. See Altai, 918 S.W.2d at 455-56. These two elements--inherent undiscoverability and objective verifiability--balance the
following conflicting policies in statutes of limitations: the benefits of precluding stale claims versus
the risks of precluding meritorious claims that happen to fall outside of an arbitrarily set period. S.V.
v. R.V., 933 S.W.2d 1, 6 (Tex. 1996). 

 Although we note that the supreme court's discovery-rule analysis has focused on
whether the discovery rule is available under the common law--whereas here, the discovery rule is
explicitly available by statute--the court's "inherently undiscoverable" analysis, which focuses on
a plaintiff's exercise of reasonable diligence, is relevant to the statutory issue here of when this
transfer could reasonably have been discovered. See Tex. Bus. & Com. Code Ann. § 24.010(a)(1). 

 An injury is inherently undiscoverable if it is by nature the type of injury that is
unlikely to be discovered within the prescribed limitations period despite due diligence. Altai, 918
S.W.2d at 456; S.V., 933 S.W.2d at 7. The question is not whether the particular plaintiff was able
to discover the injury at issue in the particular case within the statutory period, but whether the injury
is the type of injury that by its very nature falls into the category of being inherently undiscoverable. 
Horwood, 58 S.W.3d at 734-35 (Tex. 2001). In other words, would a plaintiff exercising reasonable
diligence discover the injury within the limitations period? See id. at 735.

 The supreme court has narrowed application of the discovery rule to a class of cases
in which the injury was so concealed as to be effectively undetectable by the claimant without some
type of expertise, or at least until the harm was already done. See Willis v. Maverick, 760 S.W.2d
642, 646 (Tex. 1988) (attorney-malpractice actions subject to discovery rule because of fiduciary
relationship between attorney and client and client's lack of actual or constructive knowledge of
injury); Kelley v. Rinkle, 532 S.W.2d 947, 949 (Tex. 1976) (action for false and libelous credit report
not ordinarily knowable until claimant refused credit); Hays v. Hall, 488 S.W.2d 412, 414 (Tex.
1972) (defective vasectomy operation undiscoverable until patient's wife becomes pregnant or his
fertility is shown by further testing); Gaddis v. Smith, 417 S.W.2d 577, 580 (Tex. 1967) (negligent
leaving of foreign object in patient's body by physician during surgery). In Altai, the supreme court
determined that a software company should reasonably be expected to know that trade secrets are
a valuable commodity within that highly competitive field and, through the exercise of reasonable
diligence, should be able to discover most misappropriations of its intellectual property within the
two-year statute of limitations. Altai, 918 S.W.2d at 456-57. 

 In HECI, the supreme court applied similar reasoning to application of the discovery
rule in the context of oil and gas law. See HECI, 982 S.W.2d at 886-88. In that case, owners of a
royalty interest in a mineral estate attempted to bring a claim against their lessee for failure to notify
them of a potential cause of action they had against a third party. The lessee had previously
recovered a judgment against the third party for overdrilling from a common reservoir shared by both
the lessee and the third party, in violation of rules promulgated by the Texas Railroad Commission. 
Id. at 884. The royalty owners did not become aware of the judgment, and thus their own potential
cause of action against the third party, until after the statute of limitations had run. Id. at 885. In
declining to apply the discovery rule to the plaintiffs' claim, the court found this to be a type of
injury that is generally discoverable by the exercise of reasonable diligence. Id. at 886. Thus, the
court found that in the context of an oil and gas lease, "reasonable diligence" by royalty owners to
protect their interests includes the affirmative duty to determine potential damage caused by
adjoining operators on a common reservoir. Id. The court held that the existence of public records
at the railroad commission concerning the prior suit may not constitute constructive notice, but it is
sufficient to void a claim that such an injury is inherently undiscoverable. Id. at 887. HECI makes
clear that any claim of the application of the discovery rule will be subject to a probing analysis on
a categorical basis of whether the injury alleged could reasonably be discovered by a potential
claimant's diligent efforts. See id. at 886; see also Horwood, 58 S.W.3d at 736-37 (extending
reasoning of HECI to claims based on underpayment of royalties).

 A defendant moving for summary judgment on the affirmative defense of limitations
has the burden to establish that defense conclusively. KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively
prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been
pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material
fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have
discovered, the nature of its injury. Id. If the movant establishes that the statute of limitations bars
the action, the non-movant must then adduce summary-judgment proof raising a fact issue in
avoidance of limitations. Id. 

 When a plaintiff knew or should have known of an injury is generally a question of
fact. National W. Life Ins. Co. v. Rowe, 86 S.W.3d 285, 298 (Tex. App.--Austin 2002, pet. filed);
Houston Endowment, Inc. v. Atlantic Richfield Co., 972 S.W.2d 156, 160 (Tex. App.--Houston
[14th Dist.] 1998, no pet.). However, if reasonable minds could not differ about the conclusion to
be drawn from the facts in the record, then the start of the limitations period may be determined as
a matter of law. Childs v. Haussecker, 974 S.W.2d 31, 44 (Tex. 1998); see Wheeler v. Methodist
Hosp., 95 S.W.3d 628, 639-40 (Tex. App.--Houston [1st Dist.] 2002, no pet.).

 Cadle's primary business is the purchase of outstanding bank notes for collection. 
The only reason it deposed Wilson in April 1997 was to investigate his financial situation and
determine if it could collect on the judgment it held against him. At this deposition, Cadle not only
discovered the transfer between Wilson and Greenfield, but also learned that Greenfield was not in
the business of buying bank notes; rather, Wilson asked his friend Greenfield to purchase the note
for the express purpose of negotiating more favorable payment terms. We conclude that a reasonably
diligent debt-collection business would have investigated such transfer to protect its rights. Such
conclusion is consistent with supreme-court precedent considering the "inherently undiscoverable"
requirement. See Altai, 918 S.W.2d at 456-57 (software company is expected to investigate potential
misappropriations of trade secrets because nature of business merits that level of diligence). We
conclude that to exercise due diligence a debt-collection business should investigate the nature of
the transaction once it learns of a transfer and that Cadle did not do so here.

 With the evidence presented, we conclude that reasonable minds could not differ
about the conclusion to be drawn from the facts in the record: Cadle knew about the Wilson-Greenfield transfer in April 1997, yet it did nothing until Wilson's second deposition in February
2002 to determine whether the transaction threatened its rights as a judgment-creditor. See
Bankruptcy Estate of Harrison v. Bell, 99 S.W.3d 163, 168 (Tex. App.--Corpus Christi 2002, no
pet.) (improper referral of attorney's client to another firm was injury reasonably diligent attorney
would discover within statute of limitations, and summary judgment in favor of defendant was
proper); Wheeler, 95 S.W.3d at 639-40 (summary judgment was proper on defamation claim when
physician knew about existence of adverse-action report made by former employer to national data
bank but made no attempts to determine report's contents for over a year). Reasonable minds could
not differ in concluding that Cadle should have discovered the fraudulent nature of the transfer
within a year after it first learned of its existence. Under these facts, the discovery-rule exception
in section 24.010(a)(1) required Cadle to bring suit within a year after Cadle first learned of the
Wilson-Greenfield transaction, not within a year after the allegedly fraudulent details were actually
discovered. Cadle's claim for fraudulent transfer is barred. We overrule Cadle's fourth issue.


Common-law fraudulent transfer and the "discovery rule"

 Cadle further argues that, apart from its statutory claim, it may also bring a common-law claim for fraudulent transfer. See Hoerster v. Wilke, 158 S.W.2d 288, 289-90 (Tex. 1942). To
allow common-law claims for fraudulent transfer, however, would frustrate the express purpose of
the legislature in enacting TUFTA. Section 24.012 states clearly that the purpose of the statute is
"to make uniform the law with respect to the subject of this chapter among states enacting it." See
Tex. Bus. & Com. Code Ann. § 24.012 (West 2002). The section further notes that TUFTA applies
to transfers made and obligations incurred by debtors after September 1, 1987, the effective date of
the statute. See id. Moreover, the statute makes explicit that any transfers or obligations made
before that date "are governed by the law in effect immediately before this Act took effect, and that
law is continued in effect for that purpose." See Tex. Bus. & Com. Code Ann. § 24.012 historical
note [Act of Sep. 1, 1987, 70th Leg., R.S., ch. 1004, § 2, 1987 Tex. Gen. Laws 3388, 3394]
(emphasis added). 

 The allegedly fraudulent transfer here occurred well after the effective date of
TUFTA. Thus, Cadle has no right to bring a common-law claim. (5) Summary judgment against
Cadle's fraudulent-transfer claims was proper.


Turnover and res judicata

 Cadle argues that the membership interest pledged to Greenfield should be turned
over to Cadle pursuant to its judgment against Wilson. See Tex. Civ. Prac. & Rem. Code Ann.
§ 31.002(b)(1). (6) Cadle does not, however, cite any grounds for turnover relief apart from the
allegation that the transaction between Wilson and Greenfield was a sham. Wilson and Greenfield
argue that Cadle's turnover request is barred by the doctrine of res judicata. 

 Res judicata consists of two concepts. Claim preclusion prevents the litigation of a
claim or cause of action that has been finally adjudicated, as well as related matters that, with the use
of diligence, should have been litigated in a prior suit. Barr v. Resolution Trust Corp. ex rel. Sunbelt
Fed. Sav., 837 S.W.2d 627, 628 (Tex. 1992). Issue preclusion, also known as collateral estoppel,
prevents relitigation of particular issues already resolved in a prior suit. Id.

 Cadle's original claim for turnover relief was denied by the district court in June
2002. In its petition for that claim, the only ground Cadle cited to justify turnover was the alleged
sham transaction between Wilson and Greenfield. Cadle's current turnover claim is
indistinguishable from its prior turnover claim. Because the prior turnover claim was denied by the
district court, to entertain the current claim would be to litigate a cause of action that has been finally
adjudicated. We hold that Cadle's current turnover claim is barred by res judicata. (7)


Fraudulent concealment

 Cadle also attempts to rely on the doctrine of fraudulent concealment to toll the
statute of limitations on its various claims generally. Cadle argues that, even if it failed to bring a
claim within the statute of limitations, it was only because Wilson and Greenfield fraudulently
concealed their actions. Therefore, the discovery rule should preserve its claim.

 The equitable doctrine of fraudulent concealment, when properly invoked, estops a
defendant from relying on limitations as an affirmative defense. Patrick v. Howard, 904 S.W.2d
941, 945 (Tex. App.--Austin 1995, no writ). The doctrine is limited, however, to those situations
in which the defendant has a duty of disclosure. Id. The existence of a duty of disclosure is a
question of law for the court. Id. Cases where the doctrine is applied are rare, such as those
involving doctor-patient, attorney-client, or fiduciary relationships. Id. No such duty or relationship
has been asserted by either party here. Accordingly, we hold as a matter of law that neither Wilson
nor Greenfield had any duty of disclosure to Cadle, and therefore the doctrine of fraudulent
concealment does not apply.


Ten-year statute of limitations

 Cadle additionally asserts that its claim for turnover relief is governed by the ten-year
statute of limitations for executing a writ to collect a judgment. See Tex. Civ. Prac. & Rem. Code
Ann. § 34.001 (West 1997) (judgment becomes dormant if writ of execution not issued within ten
years). The issue is not whether Cadle is barred from recovering on its judgment against Wilson,
but whether Cadle is barred from bringing a claim for fraudulent transfer to effect that purpose. 
Cadle is free to pursue collection of its judgment under any other valid theory within the standard
ten-year limitations period for collection on judgments. Cadle cannot, however, "adopt" that ten-year statute of limitations into its fraudulent-transfer claim simply by asserting that it is part of its
general pursuit of a judgment. We overrule Cadle's third issue.


Other issues

 Because summary judgment was proper on limitations grounds, we do not reach
Cadle's first and second issues concerning merger, bar, and estoppel, or Cadle's fifth issue regarding
the trial court's evidentiary rulings.


CONCLUSION

 Cadle's claim for fraudulent transfer against Wilson and Greenfield is barred by the
statute of limitations, and summary judgment was thus proper on that ground. Furthermore, Cadle's
turnover action seeking Wilson's membership interest is barred by res judicata. We affirm the
judgment of the trial court in all respects.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: May 13, 2004
1. The debt in that dispute derived from the foreclosure of a building owned by a now
terminated partnership Wilson had formed with another attorney, who is not a party to this suit. 
Cadle had purchased the obligation from the bank that originally held the lien on the building. 
Cadle's principal business is the purchase of outstanding debts for collection.
2. Wilson had consolidated five separate notes into a single promissory note in the amount
of $97,539.36, payable to First State Bank of Keene.
3. Wilson holds a 99% ownership interest in the limited liability corporation. The remaining
1% is owned by his daughter. Hereafter, Wilson's interest will be referred to as the "membership
interest."
4. Greenfield agreed to purchase the note for $40,000, to be repaid by Wilson in three years. 
During those three years, Wilson would owe only the interest.
5. Moreover, even if a common-law claim for fraudulent transfer survives the adoption of
TUFTA, case law dictates that for application of the discovery rule, the injury must be "inherently
undiscoverable," which Cadle's injury was not.
6. The text of the turnover statute reads:


(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction
through injunction or other means in order to reach property to obtain
satisfaction on the judgment if the judgment debtor owns property, including
present or future rights to property, that:


 (1) cannot readily be attached or levied on by ordinary legal process; and 


 (2) is not exempt from attachment, execution, or seizure for the satisfaction
of liabilities.



 The court may:



 (1) order the judgment debtor to turn over nonexempt property that is in the
debtor's possession or is subject to the debtor's control, [or]


 (2) otherwise apply the property to the satisfaction of the judgment[.]


Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1) (West 1997).
7. Cadle asserts that its turnover action is not barred by res judicata because Greenfield is now
a party, whereas before he was not. Greenfield's inclusion in this action is immaterial, however,
because a turnover action cannot be issued against a third party who merely possesses property
belonging to the judgment debtor. See Parks v. Parker, 957 S.W.2d 666, 668-69 (Tex.
App.--Austin 1997, no pet.). Thus, this turnover action repeats the earlier action against the same
defendant and is therefore barred. Accordingly, we do not reach Cadle's privity argument. See, e.g.,
Getty Oil Co. v. Insurance Co. of N. Am., 845 S.W.2d 794, 800-01 (Tex. 1992) (defining parties in
privity as including, but not limited to, persons who exert control over action, whose interests are
represented by party to first suit, or who are successors in interest to first party).