**Juan FLORES, as the Representative of the Estate of Roberto Flores, Deceased, Appellant,**

v.

**Candelario ONTIVEROS, Melissa Ontiveros and Med Care Emergency Medical Services, Inc., Appellees.**

No. 13–02–424–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 17, 2005.

Rehearing Overruled May 18, 2006.

David P. McClain, Jeffrey B. Price, McClain, Leppert & Maney, George M. Kirk, Jr., Houston, for Appellant.

Adam Poncio, Law Offices of Cerda & Poncio, San Antonio, J. Michael Moore, Daniel Rios, Guerra & Moore, LLP, Carlos L. Guerra, McAllen, for the Appellees.

Before Chief Justice VALDEZ and Justices CASTILLO and GARZA.

## MEMORANDUM OPINION

Opinion by Chief Justice VALDEZ.

Appellant, Juan Flores, as the representative of the estate of Roberto Flores, deceased ("Roberto"), appeals from the

judgment of the trial court granting summary judgment in favor of appellees, Candelario Ontiveros, Melissa Ontiveros, and Med Care Emergency Medical Services, Inc. ("Med Care"). We reverse the judgment of the trial court and remand.

## Background

In 1995, Roberto, his nephew, Jorge Flores, and a third party, Francisco Medrano, entered into a partnership agreement for the purpose of operating an ambulance service known as Med Trans Ambulance. After Roberto and Medrano made their initial capital investment in Med Trans, Jorge allegedly began to deny the existence of the partnership, claiming the other partners' capital contributions were in fact loans only, and changed the name of the company. Roberto and Medrano sued Jorge in 1996, seeking to recover damages for fraud, breach of contract, and breach of fiduciary duty. Medrano settled his claims prior to trial and Roberto continued as the sole plaintiff.

Following a trial before a jury, the court found in favor of Roberto on all claims and fixed damages in the amount of $5,376,934.65 plus interest. Jorge filed a notice of appeal which this Court dismissed as untimely. Jorge then filed a petition for a bill of review in the trial court. The trial court granted the bill of review, setting aside the jury verdict in the underlying case, declaring it to be null and void, and reforming it so that Roberto took nothing and Jorge was awarded his court costs.

Roberto appealed the order granting the bill of review to this Court, contending that Jorge abused the discovery process and therefore had unclean hands, rendering him ineligible for equitable relief via bill of review. We agreed, concluding that:

Jorge's conduct [was] unconscientious, unjust, marked by a want of good faith, and violate[d] the principles of equity and righteous dealing. This is especially true given that Jorge's basis for a bill of review is that Roberto had no evidence or insufficient evidence to support his claims against Jorge. The purpose of a bill of review is to prevent "manifest injustice." A bill of review should not to be used as a tool to undo justice.

*Flores v. Flores*, 116 S.W.3d 870, 877 (Tex. App.-Corpus Christi 2003, no pet.) (citations omitted). We therefore held that the trial court abused its discretion in granting Jorge a bill of review, and we reversed its decision, rendering judgment denying the petition for bill of review and reinstating the prior judgment in favor of Roberto. *See id.* at 877-78.

At some point while the *Flores I* case was proceeding, Roberto learned that Jorge had created a new company, Med Care, with the help of his former legal counsel, Candelario Ontiveros and his wife, Melissa Ontiveros. Jorge, Candelario, and Melissa had allegedly created Med Care as a way to fraudulently transfer all of Med Trans' assets away from Jorge so that they could not be reached by Roberto following a verdict in his favor. Two days after the jury verdict in *Flores I* awarded Roberto substantial damages, Roberto sued Candelario, Melissa, and Med Care (collectively, "appellees") for fraudulent transfer pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA"), tortious interference, common law fraud, breach of fiduciary duty, conspiracy and conversion. Roberto alleged that, given the jury verdict, he was a judgment creditor of Jorge and Med Trans and, furthermore, that appellees had received virtually all of the assets of Med Trans for little or no consideration specifically in order to

defeat Roberto's ability to collect on any judgment against Jorge.

In 2002, while this case was pending before the trial court, Roberto died and his brother, Juan Flores, was subsequently appointed to administer his estate. Juan continued the suit in place of Roberto.

Following the trial court's granting of Jorge's bill of review and reversal of the jury verdict in *Flores I*, appellees in this case moved for summary judgment by alleging the following: (1) Roberto lacks standing in the case, (2) his claim under TUFTA is barred by standing and the statute of limitations, (3) his claim for tortious interference is barred by the statute of limitations and a lack of evidence, (4) his claim for common law fraud is supported by no evidence, and (5) his claims for breach of fiduciary duty, conspiracy and conversion are barred by the statute of limitations. The trial court granted appellees' motion for summary judgment, stating "[Appellees] are entitled to summary judgment as to each and every basis for summary judgment on which they sought summary judgment." Roberto appeals on every ground raised in the motion.

### Motion for Summary Judgment

We review the trial court's granting of a motion for summary judgment de novo. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex.App.-Corpus Christi 2002, no pet.). Where the trial court does not state the specific grounds upon which the summary judgment was granted, the reviewing court must consider whether any theories set forth in the motion will support a summary judgment. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). A summary judgment must be affirmed if any of the theories advanced by the movant are meritorious. *Id.*

In this case, appellees' motion asserted both traditional and no evidence grounds for summary judgment, and we accordingly must review both. In a traditional summary judgment, the movant must establish that no genuine issue of material fact exists as to at least one element of the non-movant's claim and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990). All doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562; *see also Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex. 1990).

In a no-evidence motion for summary judgment, the burden is on the non-movant to present evidence raising a genuine issue of material fact in support of the challenged elements. *Smith v. Mossbacker*, 94 S.W.3d 292, 294 (Tex.App.-Corpus Christi 2002, no pet.). As in traditional summary judgments, evidence is viewed in the light most favorable to the non-movant, disregarding all contrary evidence and inferences, and if there is "more than a scintilla of probative evidence to raise a genuine issue of material fact," then the no-evidence summary judgment should not be granted. *See* TEX.R. CIV. P 166a(i); *see also Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied).

### Standing

By their first claim in the motion for summary judgment, appellees argue that Roberto lacks standing to pursue his claim.

In order to establish standing, a party must demonstrate some interest peculiar to himself individually and not solely as a member of the general public. *See*

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555–56 (Tex.2000); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984). As a general rule, a person has standing to sue if (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains, (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated, (3) he has a personal stake in the controversy, (4) the challenged action has caused the plaintiff some injury in fact, either economic, ethic, recreational, environmental, or otherwise, or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own interest. *See Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 546 (Tex. App.-Dallas 1991, no writ); *Assoc. Gen. Contractors, Inc. v. City of Corpus Christi*, 694 S.W.2d 581, 581–82 (Tex.App.-Corpus Christi 1985, no writ).

Here, appellees argue that Roberto lacks standing because the monies he invested in Med Trans in order to establish his partnership interest were "essentially stolen from his parents' business known as Mission Salvage." They support this assertion by citing testimony from Roberto's deposition in which he admits that his parents did not know that he used Mission Salvage funds to invest with Jorge in Med Trans and that, had they known, they would not have approved. Therefore, appellees allege, Roberto had no personal stake in the controversy because the proceeds he utilized were taken without the owners' consent.

■ We disagree. Appellees are making an "unclean hands" argument, but the doctrine of unclean hands "does not apply when a party is guilty of inequitable conduct with regard to a transaction separate from the one in dispute." *See Lazy M Ranch v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex.App.-Austin 1998, pet. de-nied) (citing *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 464 (Tex.App.-Dallas 1987, no writ)). Whether Roberto had his parents' permission to invest the Mission Salvage funds in Med Trans is thus irrelevant to the question of his standing to pursue this case. Roberto's inability to collect the judgment owed to him will cause him a direct injury regardless of how his original capital contribution originated. *See Rodgers*, 816 S.W.2d at 546. Furthermore, Roberto's claim against appellees will directly remedy that injury. *See Wilson v. Andrews*, 10 S.W.3d 663, 669 (Tex.1999). Therefore, Roberto does have standing to sue, and the trial court erred by granting summary judgment for appellees on this ground.

## Texas Uniform Fraudulent Transfer Act

In their second ground for summary judgment, appellees argue that Roberto's claim of fraudulent transfer under TUFTA is barred by his lack of standing and the statute of limitations.

### a. Standing

■ In order to be entitled to recovery under TUFTA, a party must achieve the status of a creditor, which is defined in the statute as a person "who has a claim." TEX. BUS. & COM.CODE ANN. § 24.002(4) (Vernon 2002). A claim is defined as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). Appellees assert that because the trial court granted their bill of review and reversed the jury verdict, instead awarding Roberto a take-nothing judgment, Roberto is no longer a "creditor" under TUFTA and therefore lacks standing to pursue his suit against them.

However, a judgment in a second case based on the preclusive effects of a prior judgment may not stand if the first judgment is reversed. *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 6 (Tex.1986). Roberto's damages award, as reinstated by this Court in *Flores I,* 116 S.W.3d at 872, is clearly a claim, rendering Roberto a creditor under the statute with standing to pursue his claim. Thus, the trial court's previous ruling on summary judgment, to the extent it was based on the bill of review's effect of eliminating Roberto's standing, must be reversed.

### b. Limitations

■ TUFTA imposes a four-year statute of limitations for filing a claim. *See* TEX. BUS. & COM.CODE ANN. § 24.010(a) (Vernon 2002). Its section on limitations, however, allows for an exception to the tolling of limitations under a statutory discovery rule:

> A cause of action with respect to a fraudulent transfer ... is extinguished unless the action is brought ... within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

*Id.* § 24.010(a)(1).

Appellees assert in their motion for summary judgment that the initial transfer from Jorge to Candelario occurred on February 6, 1996, and Med Care began operating on February 22, 1996, with these funds. Because Roberto filed his lawsuit in this current case on March 8, 2000, more than four years after these complained-of acts, appellees argue he has exceeded the statute of limitations and his claim must be dismissed. In response, Roberto argues that section 24.010(a)(1) applies and the statute of limitations had not tolled.

■ Parties alleging the defense of limitations bear the burden to prove their affirmative defense by conclusively establishing the applicability of the statute of limitations, including the date on which the limitations commenced. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 220 (Tex.2003). Here, according to the statute, limitations began to run either on the date of the transaction or on the date Roberto knew or should have known of the transaction. *See* TEX. BUS. & COM.CODE ANN. § 24.010(a)(1). When a plaintiff knew or should have known of an injury is generally a question of fact. *Cadle Co. v. Wilson,* 136 S.W.3d 345, 352 (Tex.App.-Austin 2004, no pet.). Only if reasonable minds could not differ about the conclusion to be drawn from the facts in the record may the onset of the limitations period be determined as a matter of law. *See Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex. 1998).

We have reviewed the evidence submitted to the trial court and conclude that nothing in the record indicates when Roberto discovered or should have discovered the allegedly fraudulent transfers to appellees. Roberto's pleadings and appellate brief indicate that he discovered that Jorge had fraudulently transferred the assets and partnership contributions in Med Trans to appellees at some point during the prosecution of *Flores I.* This means that Roberto's discovery could have occurred at any time between his filing of the first lawsuit against Jorge in 1996 and his filing of the second lawsuit against appellees in 2000, given that the prosecution of the first suit was still ongoing when the second suit was filed. Therefore, Roberto may or may not have filed the second suit within a year of his discovery of the fraud.

As there is no direct evidence of the exact date from which the statute of limita-

tions should toll, and the available evidence provides a range of potential dates, we conclude that appellees did not satisfy their burden as summary judgment movants to conclusively establish the date on which the limitations period commenced. *See Provident Life & Accident Ins.,* 128 S.W.3d at 220. This remains an unresolved question of fact, *see Cadle Co.,* 136 S.W.3d at 352, and accordingly, the trial court erred by granting summary judgment in favor of appellees on this ground. *See Cate,* 790 S.W.2d at 562.

**Tortious Interference**

Appellees argue in their third claim for summary judgment on both no evidence and traditional grounds that Roberto's claim of tortious interference with an existing contract must fail for the following reasons: (1) the statute of limitations bars his claim, (2) there is no evidence of a valid enforceable contract between Jorge and Roberto, (3) there is no evidence of the elements of a valid partnership agreement between Jorge and Roberto, (4) there is no evidence of causation by appellees, and (5) there is no evidence of any existing contracts between Med Trans and its employees, customers, suppliers or government entities.

**a. Limitations**

 Appellees argue that Roberto's claim for tortious interference is barred by the statute of limitations. In his response, Roberto argues that the discovery rule should apply to this claim.

 A claim for tortious interference is governed by a two-year statute of limitations. *Harrison v. Bell,* 99 S.W.3d 163, 167 (Tex.App.-Corpus Christi 2002, no pet.); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 2002). The rule provides that limitations will begin to run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Childs,* 974 S.W.2d at 40.

 As discussed above, the evidence establishes a range of potential dates on which Roberto may have discovered the purportedly fraudulent transactions. Thus, the determination of the date from which limitations must run remains an unresolved question of fact, and the trial court could not have properly granted summary judgment on this ground. *See Cadle Co.,* 136 S.W.3d at 352; *Provident Life & Accident Ins.,* 128 S.W.3d at 220.[1]

**b. Partnership Agreement**

Appellees argue that the trial court's order granting the bill of review in *Flores I* establishes that Roberto had no right to recover on the alleged agreement between them. However, as previously noted, this Court's opinion in *Flores I* had the effect of reversing the bill of review. *See Flores,* 116 S.W.3d at 877–78. To the extent the order granting summary judgment was based on the bill of review granted by the trial court, it must be reversed. *See Scurlock Oil,* 724 S.W.2d at 6.

---

1. This analysis also holds true for appellees' statute of limitation arguments in response to Roberto's claims of breach of fiduciary duty, conspiracy, and conversion. *See Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988) (holding that breach of fiduciary duty justified using discovery rule to toll limitations); *In re Estate of Herring,* 970 S.W.2d 583, 586 (Tex. App.-Corpus Christi 1998, pet. denied) ("the discovery rule applies to conspiracy to commit fraud"); *Hofland v. Elgin–Butler Brick Co.,* 834 S.W.2d 409, 414 (Tex.App.-Corpus Christi 1992, no writ) (applying discovery rule in conversion cases involving fraud and deceit). The trial court could not have properly granted summary judgment based on limitations on any of these three grounds.

Appellees also argue in their motion for summary judgment that there was no meeting of the minds with regard to the partnership agreement between Jorge and Roberto. Specifically, they cite to the purported failure of the partners to agree upon (1) the initial capital investment, (2) control over bank account and expenses, (3) dissolution procedures, (4) buyout procedures, and (5) principal place of business.

In the evidence attached to Roberto's response to appellee's motion is an unsigned copy of the partnership agreement; according to testimony by a former Med Trans employee at the *Flores I* trial, Jorge destroyed the only signed copy of this agreement. However, despite the lack of a signed copy of the partnership agreement, the jury resolved that a partnership agreement must have existed, and therefore, collateral estoppel applies. When asserted in a second action against a party who was actually a party in the first action, the doctrine of collateral estoppel bars relitigation of fact issues that were fully and fairly litigated and that were essential to the prior judgment. *State & County Mut. Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696–97 (Tex.2001) (per curiam). Here, Roberto was a party to the first suit and the finding of a valid partnership agreement between himself and Jorge was crucial to establish his entitlement to damages from Jorge. Furthermore, the elements that appellees complain about are not themselves indicative of a lack of a partnership agreement. In order to establish a partnership or joint venture, a plaintiff must show (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right or control or management of the enterprise. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997). Details regarding

control and management are not necessary so long as these basic requirements are satisfied. *See Park Cities Corp. v. Byrd,* 534 S.W.2d 668, 672 (Tex.1976). Through Roberto's deposition testimony and the copy of the partnership agreement, we determine that these basic requirements were in fact met. Furthermore, we have reviewed the points in Roberto's deposition testimony which appellees assert demonstrate evidence of a lack of meeting of the minds on various issues. We do not find that this testimony indicates there were major disagreements between the partners on questions of initial capital investments, management, and control. Appellees therefore cannot assert that there was no enforceable partnership agreement between Jorge and Roberto.

### c. Causation

Appellees also argue in their motion for summary judgment that the causation element of tortious interference has not been established.

The elements of tortious interference with an existing contract are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract (3) that proximately caused injury, and (4) actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). Appellees attack the causation element of this test, arguing that "[Roberto]'s own testimony establishes that [appellees] did not do anything to induce [Jorge] to breach his agreement with [Roberto]," because Jorge had already breached the partnership agreement and caused Roberto's damages before engaging in any subsequent transfers of the partnership funds and company assets with appellees.

With this argument, appellees attempt to misdirect this Court. Roberto is not alleging that appellees caused Jorge to

breach his partnership agreement; instead, he is claiming that, following this breach, appellees then colluded with Jorge to hide the funds Jorge himself had put at risk because of that initial breach. In Roberto's deposition testimony, we can see he has presented adequate evidence to raise a question of fact as to whether appellees assisted or otherwise caused Jorge to engage in the fraudulent transfer of Med Trans funds. Therefore, summary judgment could not be properly granted on this ground.

### d. Existing Contracts

■ Finally, appellees argue that there is no evidence that there were any existing contracts between Med Trans and its employees, customers, suppliers, or government entities or municipalities, and therefore Roberto has failed to establish the first element of tortious interference, i.e., an existing contract subject to interference. *See id.* at 77. In support of this claim, appellees point to Roberto's deposition testimony in which he discusses the customers, suppliers, and employees of Med Trans but admits that he never saw any written contracts involving any of these parties.

While some types of contracts do have to be in writing to be enforceable, there is no blanket requirement that all contracts for employees, suppliers, or customers be in writing in order for a tortious interference claim to be substantiated. *See id.* at 83 (concluding there was evidence of tortious interference based in part on interference with an oral agreement). Roberto's testimony indicates there were working contractual relationships between Med Trans and these entities. Appellees, other than pointing out the lack of written contracts in the evidence, have provided no evidence to dispute this.

Therefore, Roberto met his burden to defeat appellees' no evidence claims, and the trial court erred in granting summary judgment on these grounds.

### Fraud

Appellees assert in their fourth ground for summary judgment there was no evidence to support Roberto's claim for fraud.

■ The elements of common-law fraud are as follows: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 524 (Tex. 1998). Appellees specifically contend that there is no evidence that a material representation was made or that Roberto suffered injury as a result of any fraudulent act.

### a. Material Misrepresentation

■ We first address whether there was in fact a material misrepresentation by appellees. This is not necessarily an element that requires an affirmative representation; in some cases, fraud may be found where there has been a material omission or failure to speak. *See Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 536 (Tex.App.-Corpus Christi 1994, no writ). A material omission is typically considered an element of a claim for fraud when there is a duty to speak. *See id.*

Appellees simply assert there was no misrepresentation made to Roberto. We agree that the available evidence supports this assertion. However, appellees have failed to address the possibility that their failure to inform Roberto about the trans-

fer of Med Trans' assets could still constitute a material omission, given that Roberto was a judgment creditor to the funds they were allegedly appropriating. By producing testimonial evidence showing that appellees are in a fiduciary relationship with Med Trans by acquiring all of its assets, and therefore stand in a fiduciary relationship with Roberto as a partner of Med Trans, we conclude that Roberto has produced at least a scintilla of evidence sufficient to raise a genuine issue of material fact regarding fraud. We also note that appellees have not contested Roberto's assertion that they owe him a fiduciary duty. Appellees are not entitled to a no-evidence summary judgment on this ground. *See Smith,* 94 S.W.3d at 294.

### b. Injury

Appellees argue that there is no evidence that they proximately caused injury to Roberto "since [Roberto] admits that [Jorge] committed fraud long before his involvement with the Ontiveroses and Med Care...." Roberto, however, is complaining about being injured by a separate, second act following Jorge's initial act of fraud, and his petition makes it very clear he is complaining that appellees' acts proximately caused him this second injury. Appellees' allegations, by focusing solely on Jorge's first act of malfeasance, do not respond to Roberto's claim and therefore provide no valid grounds for summary judgment. We conclude the trial court erred by granting summary judgment on this ground.

### Conclusion

We reverse the trial court's order granting summary judgment in favor of appellees and remand to the trial court for further proceedings.