**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 17, 2013

Lyle W. Cayce
Clerk

No. 12-50221

TARGET STRIKE, INCORPORATED,

Plaintiff - Appellant

v.

MARSTON & MARSTON, INCORPORATED;
MARSTON ENVIRONMENTAL, INCORPORATED;
CLIFFORD R. WILLIAMS, "Kip"; WILLIAM J. HARTLEY;
GOLD REEF INTERNATIONAL, INCORPORATED;
GOLD REEF OF NEVADA, INCORPORATED;
CRANDELL ADDINGTON; SADIK AL-BASSAM;
RICHARD CRISSMAN CAPPS; LOU B. KOST, JR.;
LOU KOST HOLDINGS, LIMITED; WILLIAM SHAFFER;
PAUL STROBEL; RESURRECTION CANYON, INCORPORATED,
formerly known as Panther Resources, Incorporated;
RESURRECTION CANYON, L.L.L.P., formerly known as
PantherResourcesPartners, L.L.L.P; ADDKO, INCORPORATED;
TEXAS RESEARCH, LIMITED LIABILITY COMPANY;
L.K. & C.A., INCORPORATED;

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CV-188

Before DAVIS, JONES, and SMITH, Circuit Judges.

No. 12-50221

EDITH H. JONES, Circuit Judge:[*]

This appeal concerns the district court's summary judgment against Target Strike, which alleges causes of action for misuse of its confidential information in the locating and staking of mining claims. Based on oral argument, the briefs, and a thorough review of the record, we affirm the judgment.

## BACKGROUND

The following factual summary is pared to its essentials. Target Strike owns proprietary technology that it used in the 1990s to analyze publicly available data and identify seventy-three "target areas" or "anomalies" on federal land in Nevada with a high potential for the mining of gold and other precious metals.[1] Target Strike hired Marston Environmental, Inc., an environmental services and civil engineering firm and a subsidiary of Marston & Marston, Inc. (collectively, "Marston"), to perform additional necessary field work at the target areas. Marston employed William Hartley to create a map of the seventy-three target areas, and its president, Kip Williams, prepared a draft business plan. On December 12, 1996, Marston and Target Strike signed a consulting services agreement covering thirty-seven of the target areas. The contract contained a confidentiality agreement requiring Marston to "keep all information secured in connection with or generated as a result of performing the Services in strict confidence."

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The target areas range from four square miles to one hundred square miles.

No. 12-50221

Target Strike formed a joint venture, Gold Resources, with investor D.L. Neese (and assignees) in 1997 to explore sixteen of the target areas.[2] In June of 1997, Gold Resources signed a contract with Marston to investigate those sixteen target areas. The contract also included a confidentiality clause, requiring Marston "to keep all information secured in connection with or generated as a result of performing the Services in strict confidence." Marston's work for Gold Resources included a project called Double Mountain. William Shaffer worked as an independent contractor on the Double Mountain project.[3] Crandell Addington and Lou B. Kost, Jr. purchased an option interest in the Double Mountain project in 2002 and unsuccessfully sought to acquire an interest in Target Strike's technology.

A disagreement among the members of Gold Resources was resolved by a July 30, 2001 arbitration order. The arbitration order split control of the sixteen target areas. The parties were released as to their confidentiality responsibilities concerning those target areas but not otherwise and were not released as to Target Strike's technology. In late 2001, Neese approached Addington and Kost about investing in Gold Resources' projects. Neese asked Marston, acting through Williams, to make a presentation of Gold Resources' target areas to Addington and Kost (excluding the target areas awarded to Target Strike). Gold Resources did not enter a confidentiality agreement with either Addington or Kost. An entity owned by Addington and Kost eventually

---

[2] Target Strike showed maps depicting various target areas to Neese before Neese decided to finance Gold Resources.

[3] Shaffer had previously been engaged by Target Strike, Gold Resources, or both.

No. 12-50221

invested in the Double Mountain project and assigned an interest to Sadik Al-Bassam.  The Double Mountain project ultimately yielded no gold.

Addington, Kost, and Al-Bassam formed a gold mining company in 2004, Gold Reef of Nevada, Inc., which later merged into a Canadian company and became known as Gold Reef International, Inc. (collectively, "Gold Reef") and hired Marston, through Williams, to do field work.[4]  Gold Reef later hired Williams, who became its president, and contracted with other Marston geologists.  Business plans produced by Addington, Kost, and Al-Bassam in discovery describe efforts to evaluate "area[s] in [n]ortheastern Nevada, which had been analyzed using a patented software technology developed in the former Soviet Union"[5] and references a total of seventy-three target areas.

Shaffer staked five claims in northeastern Nevada on Gold Reef's behalf (one of the claims was later dropped), recording the claims in August 2005. None of the five claims were in the target areas shown to Addington and Kost, but they were nearby.  Each of these claims was the statutory maximum size of 600 feet by 1500 feet.  Bureau of Land Management regulations require that claim boundaries must be marked by physically staking the four corners of the claim.  43 C.F.R. § 3832.11(c)(2).  A notice of location including the name of the locator and a description of the claim must also be posted in a "conspicuous place" on the claim.  *Id.* § 3832.11(c)(3).  Shaffer used four-foot long 2" x 2" stakes and metal tags with the claim name and identifying information.  He filed the claims with the Nevada office of the Bureau of Land Management and the county recorder.  *Id.* § 3832.11(c)(4); Nev. Admin. Code § 517.180.  The claim

---

[4] Williams became president of Gold Reef in February of 2007.

[5] Target Strike was formed by three former citizens of the Soviet Union.

## No. 12-50221

certificates of location described the claim by state, meridian, township, range, section, and aliquot part to the quarter section based on the rectangular subdivisions of the U.S. Public Land Survey System.  43 C.F.R. § 3832.12(a)(1). Counties in Nevada are required to keep maps of mining claims that accurately delineate the location of all claims recorded in the county after July 1, 1971. Nev. Admin. Code § 517.050.  Claim records and maps are publicly accessible through the Bureau of Land Management and the county in which the claim is located.  Claim information may also be available online at a Bureau of Land Management website[6] or SEDAR, a Canadian system.

Target Strike first became suspicious its rights had been violated in February 2008 when its president read an article in the San Antonio Business Journal stating that Addington had an idea for software to "take the guesswork out of precious metals exploration."  Target Strike investigated and discovered the Gold Reef claims.

On February 10, 2010, Target Strike filed suit in state court for misappropriation of trade secrets and other entirely state law claims.  Target Strike sued Addington, Kost, and Al-Bassam in their individual capacities as well as L.K. & C.A., Inc., Texas Research, Kost Holdings, ADDKO, and two Panther Resurrection Canyon companies, all entities they controlled (collectively, the "Addington Defendants"); Gold Reef; Marston; Richard Capps and Williams; William Hartley and Shaffer; Paul Strobel; and others who are no longer parties to the suit.  Target Strike did not sue Neese.

---

[6] Williams testified that the Bureau of Land Management site was not available for a period of time around 2004.

No. 12-50221

On March 5, 2010, the case was removed to federal court. Target Strike did not object to the removal or file a motion for remand but instead amended its complaint to add a federal claim under the Lanham Act. A later amendment also included a Lanham Act claim. For a year, the parties engaged in substantial discovery, numerous dispositive motions were filed, and the magistrate judge issued ten reports and recommendations. After the defendants filed a motion for judgment on the pleadings on Target Strike's Lanham Act claim, Target Strike moved for the voluntary dismissal of its sole federal claim on February 7, 2011. On May 31, 2011, Target Strike filed a motion to remand. The district court denied that motion.

On April 8, 2011, the district court granted summary judgment in favor of geologists Hartley and Shaffer on the basis that there was no evidence that they misappropriated or participated in a scheme to misappropriate Target Strike's trade secrets. On May 25, 2011, the district court granted summary judgment in favor of the corporate Addington Defendants because the record included no evidence on which a rational trier of fact could find for Target Strike against them. On September 30, 2011, the district court granted summary judgment in favor of the individual Addington Defendants, who, it concluded, were shielded from liability as directors, officers, or shareholders of the corporate Addington Defendants; additionally the court held there was no evidence that they misappropriated or participated in a scheme to misappropriate Target Strike's trade secrets. In that same order, the district court granted summary judgment in favor of Marston, Capps, and Williams on limitations grounds. On February 6, 2012, the district court granted summary judgment in favor of

No. 12-50221

Strobel on the same grounds.   Each of the defendants raised a statute of limitations defense before the district court.

## STANDARD OF REVIEW

We review "questions of subject matter jurisdiction *de novo*." *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009).  A district court's decision not to remand pendent state claims is reviewed for abuse of discretion.  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158 (5th Cir. 2011); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 455 (5th Cir. 1996).

We review "the district court's grant of summary judgment *de novo*, applying the same standards as the district court.  Summary judgment is warranted if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (internal citations omitted).

## DISCUSSION

On appeal, Target Strike argues that the district court did not have subject matter jurisdiction after Target Strike sought voluntary dismissal of its sole federal claim, and alternatively, that the district court erred in granting summary judgment to some of the defendants on the merits and the other defendants on limitations, and erred in striking Target Strike's damages expert.

## I.     Jurisdiction

Target Strike originally filed in state court.  After its suit was removed to federal court, it soon chose to pursue a federal claim rather than to seek remand.  Only after Target Strike extensively litigated the suit for over a year was that claim dropped, leaving Target Strike with no federal claim.  Nonetheless, Target

No. 12-50221

Strike continued to litigate the case in federal court. Three months after it abandoned its federal claim, and after summary judgment was granted in favor of several of the defendants, Target Strike sought remand.

"Subject matter jurisdiction may not be waived, and the district court 'shall dismiss the action' whenever 'it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter.'" *Amitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995). However, lack of subject matter jurisdiction—and improper removal—may be cured by the addition of a federal claim by amended complaint. *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1202 (5th Cir. 1997); *Kidd v. Southwest Airlines Co.*, 891 F.3d 540, 547 (5th Cir. 1990). Moreover, when no federal claims remain prior to trial, a federal court may discretionarily exercise supplemental jurisdiction over the remaining state law claims in the case when principles of economy, convenience, fairness, and comity compel it to do so. 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

This case presents two scenarios that, while rather typical and easily decided alone, together present an unusual situation in this court. The case did not include a federal claim on its face when removed to federal court nor when final judgment was entered. Quite a bit happened in the interim, however. Target Strike twice filed an amended complaint including a federal claim. For well over a year the numerous parties actively litigated multiple issues, resulting in the district court's granting Hartley, Shaffer, and the corporate Addington Defendants summary judgment and the magistrate judge's issuing ten separate reports and recommendations before Target Strike moved to remand. Extensive discovery had generated considerable attorneys' fees. Only

No. 12-50221

when the judicial tide appeared to turn against it did Target Strike seek remand. It had since ceded its federal claim, but because the deadline for amendment as a matter of right had passed, it instead had sought voluntary dismissal. At that point, the principles of economy, convenience, fairness, and comity clearly tilted in favor of the district court's exercising supplemental jurisdiction over the remaining state claims.

## II.    Summary Judgment

As noted above, the district court granted summary judgment in favor of each of the appellees in this case. The court granted summary judgment in favor of Hartley, Shaffer, and all of the individual and corporate Addington Defendants on the merits. The district court granted summary judgment in favor of Marston, Capps, Williams, and Strobel on limitations grounds.

### A.    Statute of Limitations

The longest applicable statute of limitations for any of Target Strike's claims is four years.[7] The complained of acts occurred, at the latest, when Shaffer recorded five mining claims near Target Strike's target areas in August 2005. Target Strike filed suit on February 10, 2010.

---

[7] Claims for breach of contract and breach of fiduciary duty are governed by a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.004(a)(5) (Vernon Elec. Update 2010) (breach of fiduciary duty); § 16.051 (residual period); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (breach of contract). Claims for misappropriation of trade secrets and proprietary information and unfair competition are governed by a three-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.010 (Vernon 2010). Claims for negligence, conversion, and unjust enrichment are governed by a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002) (negligence and conversion); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (unjust enrichment); *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 822 (Tex. App.—Corpus Christi 1988, writ denied) (conspiracy).

Generally, a claim accrues and the limitations period begins to run "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex. 1996). However, under the Texas discovery rule, the limitations period does not begin to run "until the plaintiff knew or, exercising reasonable diligence, *should have known* of the facts giving rise to a cause of action." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). The Texas Supreme Court has sought to limit the application of the discovery rule and, to that end, has stated that it should only apply where the nature of the injury is inherently undiscoverable and where the injury itself is objectively verifiable. *Id.* (relying on *Computer Assocs. Int't, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). The state of Texas, however, has incorporated the discovery rule by statute for misappropriation of trade secrets, Tex. Civ. Prac. & Rem. Code § 16.010(a), and thus we analyze the district court's decision under the discovery rule.

In *HECI Exploration* the question was whether the plaintiff landowners, in the exercise of reasonable diligence, should have known of the damages caused to their mineral interests by abusive drilling practices occurring on adjacent land by a third-party oil company. *HECI Exploration*, 982 S.W.2d at 884; *see also Cadle Co. v. Wilson*, 136 S.W.3d 345, 351 (Tex. App.—Austin 2004, no pet.) (examining *HECI Exploration*'s analysis of whether an injury was inherently undiscoverable as "relevant to the statutory issue here of when this [injury] could have been discovered"). The plaintiffs maintained that they were merely royalty interest-holders and had no reason to be aware of the damages caused by third-party drilling on a common reservoir. *Id.* at 886. Quite relevant

to this case, the Texas Supreme Court concluded that the plaintiff landowners "had some obligation to exercise reasonable diligence in protecting their interests." *Id.* Moreover, landowners "cannot be oblivious to the existence of other operators in the area." *Id.* The duty of reasonable diligence extends to monitoring one's own property, monitoring adjacent property, making general inquiries to knowledgeable parties, and inspecting publicly available records that would disclose the facts giving rise to the cause of action. *Id.* at 886–88 (citing *Shivers v. Texaco Exploration & Prod., Inc.*, 965 S.W.2d 727, 735 (Tex. App.–Texarkana 1998, writ denied); *Koch Oil v. Wilber*, 895 S.W.2d 854, 863 (Tex. App.–Beaumont 1995, writ denied)).

> Although we note that the supreme court's discovery-rule analysis has focused on whether the discovery rule is available under the common law—whereas here, the discovery rule is explicitly available by statute—the court's "inherently undiscoverable" analysis, which focuses on a plaintiff's exercise of due diligence, is relevant to the statutory issue here of when this transfer *could reasonably have been discovered*. *See* Tex. Bus. & Com. Code Ann. § 24.010(a)(1).
> *Cadle Co.*, 136 S.W.3d at 351.

Target Strike argues that it could not reasonably have known about the claims because they were staked by Shaffer in his own name while acting as agent of Gold Reef. Target Strike's argument that it had no way to suspect the claims were made using their confidential information because Shaffer was used as a proxy is contradicted by the testimony of its president that the location of the claims led him to believe Target Strike's confidential information had been misappropriated.[8] Target Strike also had reason to be alerted by a claim staked

---

[8] Knowledge of the claims alone would have been sufficient. Even under the discovery rule, the limitations period is only deferred until the plaintiff discovers or should have

No. 12-50221

by Shaffer—Shaffer had previously performed work on the Double Mountain project, and Target Strike knew he had some familiarity with the target areas.[9] Moreover, Target Strike had every reason to monitor diligently claims in or around the seventy-three target areas it had identified as likely profitable mining locations and ample reason to monitor the mining activities of parties who had been exposed to the target areas. Target Strike could have monitored its target areas by physically visiting the areas to look for claim stakes, by going to the relevant county courthouses to view clam records and maps, by searching on the Bureau of Land Management website or SEDAR, or by hiring someone to monitor the target areas for claims. Had Target Strike done so, it would have known well within the applicable statute of limitations that claims had been staked near five of its target areas and it could have timely investigated whether a misappropriation of its confidential information had occurred. Accordingly, even viewing the facts in the light most favorable to Target Strike we affirm summary judgment in favor of Marston, Capps, Williams, and Strobel on limitations grounds.

---

discovered "an injury and its general cause, not the exact cause in fact and the specific parties responsible. *Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 492 (Tex. App.—San Antonio 2003, pet. denied).

[9] Target Strike argues that the defendants should have been estopped from raising limitations as a defense under the doctrine of fraudulent concealment because Shaffer staked the claims as an agent for Gold Reef. Where a defendant has hidden evidence of harm from a plaintiff, he will not "be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). Fraudulent concealment, however, requires as an element that the plaintiff reasonably rely on a deception by the defendant. *Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex. App.—El Paso 2010, pet. denied). Target Strike established no genuine issue of material fact concerning either reliance or the reasonableness of any reliance.

No. 12-50221

Because the limitations period applies to each of the defendants, and because each of the defendants raised the defense before the district court, we affirm summary judgment in favor of the remaining appellees on this basis. *See LLEH, Inc. v. Wichita Cnty., Tex.*, 289 F.3d 358, 364 (5th Cir. 2002) ("[This court] may affirm for reasons other than those relied upon by the district court."). We need not, and do not, reach the other grounds on which the district court relied in granting summary judgment in favor of the other defendants.[10]

## CONCLUSION

Accordingly, the district court is **AFFIRMED** on all grounds.

---

[10] Because Target Strike's claims are barred by the statute of limitations, we need not decide whether the district court improperly struck Target Strike's damages experts.