

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-23-00295-CV

GEORGE R. CHAPMAN, APPELLANT

V.

MARY STOY JOHNSON, STEPHANIE BROOKE JOHNSON, LLC,
AND STEPHANIE BROOKE JOHNSON-TURNER, APPELLEES

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-2019B-024, Honorable Roland D. Saul, Presiding

December 22, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

George Chapman appeals the trial court's summary judgment denying him recovery against Mary Stoy Johnson, Stephanie Brooke Johnson, LLC, and Stephanie Brooke Johnson-Turner (Stephanie and the others). We reverse.

***Background***

One can find the following evidence in the summary judgment record. Mary and Stephanie were mother and daughter, respectively. The LLC was a trucking company

originally created and operated by Stephanie. The company, or Stephanie, utilized one driver, her father Brad Johnson, whom she allegedly never paid, hired, or treated as her employee or that of the LLC. Nevertheless, she paid his living expenses from funds acquired from those entities which retained Brad's services. Apparently, Brad contacted those shippers and agreed to haul their loads with a truck tractor rig purportedly owned by Stephanie and, later, Mary. The shippers would then send Stephanie (and Mary at a later date) their payments which she deposited in her personal bank account. From that account, Stephanie (and Mary at a later time) paid the aforementioned living expenses of Brad.

Chapman deemed this arrangement as a scheme by which Brad could remain insolvent. The record indicates that Brad was a judgment debtor to an award granted Chapman in 1999 exceeding $1,000,000.

Brad never paid the judgment debt before dying in October 2018. Nor did anyone probate his estate due to his allegedly owning nothing. That lead to Chapman suing Mary and the LLC under the Texas Uniform Fraudulent Transfer Act on February 6, 2019. He joined Stephanie as a party in June 2019, despite her having divested herself of all relationship to the trucking operation and its assets in January 2015. From that point in January 2015, Mary took control of the business, its assets, and the relevant bank account. So too did Mary pursue Stephanie's mode of operation viz-a-viz Brad, his operation of the truck tractor rig, the monies sent by shippers, and his living expenses.

After Chapman sued, Stephanie and the others moved for both a traditional and no-evidence summary judgment. The former was based on limitations. Through the latter, they contended that Chapman had no evidence of a transfer as contemplated under

2

the Fraudulent Transfer Act. The trial court granted the motions without specifying any particular ground upon which it acted. This appeal ensued, through which Chapman asserts the trial court erred in granting summary judgment.

### Analysis

The applicable standards of review appear in *JLB Builders, L.L.C v. Hernandez*, 622 S.W.3d 860 (Tex. 2021). We apply them here and begin by considering the no-evidence aspect of the judgment. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (stating that when a party moves for both a traditional and no-evidence summary judgment, our review starts with the no-evidence motion).

### No Evidence

Through his live pleading, i.e., "Plaintiff's Fourth Amended and Original Answer," Chapman alleged: 1) "[f]rom April 23, 2010 to October 2018 [Brad] and Defendants utilized SBJ Trucking to conceal [his] ownership of non-exempt assets in order to hinder and delay attempts to satisfy the [1999] Judgment"; 2) "[w]hile SBJ Trucking and/or Mary Johnson nominally own the Vehicles [e.g., truck tractor rig], their ownership is merely an artifice to conceal the fact that Decedent owned and exercised control over the Vehicles"; 3) "Defendants utilized the SBJ Trucking entity, the "Stephanie Brooke Johnson" bank account, and the Mary Stoy Johnson d/b/a SBJ Trucking bank account to conceal and obscure Decedent's income and assets"; 4) Brad "and Defendants engaged in a scheme whereby [Brad] routed money he earned truck driving through Defendants and acquired the Vehicles in Defendants' names, so that he could avoid the Judgment Debt"; and 5) "[t]hese transfers should be disregarded and the Defendants should be required to turn

3

over all non-exempt assets that were products or instrumentalities of their scheme and conspiracy." Reading these allegations liberally, *see Beverly Found. v. Lynch*, 301 S.W.3d 734, 739 (Tex. App.—Amarillo 2009, no pet.) (requiring us to do so), we see at least two kinds of supposed transfers. One encompassed the vehicles Brad used to complete his trucking services, while the other concerned the monies paid by shippers first to Stephanie and then Mary in exchange for those services. The summary judgment movants at bar argued that Chapman had no evidence of either. The record showed otherwise.

Again, Brad maintained the truck tractor rig, sought out the shippers, and transported their cargo. Those clients would then forward payment for his services to Stephanie before January 2015 and Mary d/b/a SBJ Trucking thereafter. Both Stephanie and Mary deposited the sums received in accounts which Brad did not own. Yet, they used those accounts for his benefit, i.e., pay his expenses. These circumstances liken to those in *Spencer & Assocs., P.C. v. Harper*, 612 S.W.3d 338 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

In *Spencer*, we find a judgment debtor, Stephen Harper, who was the president of ZO Energy. Spencer & Associates, a law firm, apparently represented Harper in a legal matter. *Id.* at 343. When Harper failed to pay his legal bill, the law firm obtained a judgment against him, which judgment went unsatisfied. *Id.* Eventually, the firm sued Harper, his wife, and ZO under the the Uniform Fraudulent Transfer Act (Act). Thereafter, Harper and the others filed their no-evidence motion for summary judgment, challenging each element of the cause of action. *Id.* at 344. The trial court granted it.

4

Among other things, the existence of a transfer, for purposes of the Act, was in debate. Unlike the trial court, the reviewing court found sufficient evidence to create a material issue of fact on the existence of a transfer. It described the evidence uncovered in this way:

> [W]hile Harper serves as president and director of ZO Energy, assists Vicki in putting together drilling prospect packages for ZO Energy, "do[es] the operational part" of the company, and occasionally acts as a landman for ZO Energy, ZO Energy does not pay Harper a salary. Instead, in lieu of a paycheck for Harper, ZO Energy either pays Harper's bills and expenses directly from its bank account, or it transfers funds to Vicki, who then pays the Harpers' bills from her own bank account.

*Id.* at 358. According to the court, "[t]his is some evidence that Harper has transferred funds to ZO Energy and, ultimately, to Vicki by essentially assigning to them his right to income that he has earned for the work he performs for ZO Energy." *Id.* In other words, the court determined that the circumstances fell within the statutory definition of a transfer. And, that definition encompassed "'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.'" *Id.* at 357 (quoting TEX. BUS. & COM. CODE ANN. § 24.002(12)).

Unlike Harper, Brad may not have held a title or office with the business being sued. Yet, like Harper, he effectively conducted the business's operations. He secured the loads to transport while maintaining the means by which they were transported. Like ZO, Stephanie and the others received the benefits of Brad's labor, that is, payment from those entities utilizing Brad's transportation services. Like ZO, neither Stephanie nor the others paid Brad a salary. Instead, like ZO, they paid the judgment debtor's bills and living expenses. Like the *Spencer* court, we too find the circumstances before us

5

indicative of a transfer within the definition of § 24.002(12). Paraphrasing the *Spencer* court, "this is some evidence that [Brad] has transferred funds to [Stephanie and the others] by essentially assigning to them his right to income that he has earned for the work he performs." *Id.* at 358. At the very least, Chapman presented evidence raising a material question of fact on the sole element attacked by Stephanie and the others via their no-evidence summary judgment motion. So, the trial court erred in granting the motion.

*Traditional*

Having found error in granting the no-evidence aspect of the summary judgment motion, we turn to the traditional aspect. Therein, Stephanie and the others argued that limitation (or the statute of repose) expired before Chapman sued. The record, however, fails to show that they carried their burden on the matter.

Per § 24.010(a) of the Texas Business and Commerce Code, "a cause of action with respect to a fraudulent transfer or obligation . . . is extinguished unless [an] action is brought . . . under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Tex. Bus. & Com. Code Ann. § 24.010(a)(1). In turn, § 24.005(a)(1) states that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 24.005(a)(1).

Though Stephanie and the others dispute the clarity with which Chapman averred a claim under § 24.005(a)(1), they did not specially except to the live pleading. That

6

omission obligates us to liberally interpret the document once again. *Bos v. Smith*, 556 S.W.3d 293, 305-306 (Tex. 2018) (requiring us to liberally construe a pleading where "no special exception is made"). In doing so, we find reference to Stephanie and the others "utiliz[ing] SBJ Trucking to conceal [Brad's] ownership of non-exempt assets in order to hinder and delay attempts to satisfy the [1999] Judgment." Those assets included monies deposited into the bank accounts of Stephanie and Mary. According to Chapman, the accounts were used "to conceal and obscure [Brad's] income and assets . . ." to further a "scheme with the purpose of hindering, delaying, or defrauding Decedent's creditors." Reasonably within this verbiage lies an allegation that Brad made a transfer with the intent to hinder, delay, or defraud a creditor within the umbrella of § 24.005(a)(1). That transfer consisted of shipper payments earned through his efforts but instead sent to and deposited in personal accounts of Stephanie and the others. Thus, the limitations period in § 24.010(a)(1) controls. And, because the movants invoked it as an affirmative defense, it fell upon them to prove its elements as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2003) (noting that one invoking the affirmative defense of limitations has the burden to prove it, which burden includes the date on which limitations commenced).

Reading § 24.010(a)(1) as written, we find that the legislature incorporated into it two potential periods of limitation. The first consists of suing within four years from the date of the transfer. The other concerns a creditor who knew not of the transfer; in that circumstance, the claimant must sue "within one year after the transfer . . . was or could reasonably have been discovered." So, Stephanie and the others had the obligation to

7

prove Chapman acted outside the parameters of both. Before we assess whether they did, a preliminary matter needs attention.

Contrary to the suggestion otherwise, Chapman's alleged failure to plead the discovery rule is of no consequence for several reasons. First, acting within one year of discovery under § 24.010(a)(1) is not a defense to limitations in the traditional sense. It actually is part of the statutory period adopted by the legislature. So, it not being a defense to limitations means it need not be pleaded.

Second, we remind all that the burden to prove limitations rests with the one asserting it. *See Provident Life*, 128 S.W.3d at 220. That task entails proving the date limitations began, that is, the date the cause of action accrued. Per § 24.010(a)(1), limitations begins on either 1) the date of the transfer or 2) date the complainant knew or should have known of it. *Flores v. Ontiveros*, 218 S.W.3d 98, 105 (Tex. App.—Corpus Christi 2005), *aff'd in part, rev'd in part on other grounds*, 218 S.W.3d 70 (Tex. 2007). Thus, as part of his burden under *Provident Life*, the defendant interjecting limitations must prove when his opponent knew or reasonably could have known of the transfer. *Flores*, 218 S.W.3d at 105–06 (concluding that the defendant appellees "did not satisfy their burden as summary judgment movants to conclusively establish the date on which" plaintiff knew or should have known of the transaction). This, in turn means Stephanie and the others had to prove when Chapman knew or should have known of Brad's transfers as part of their summary judgment burden and irrespective of whether Chapman pleaded the discovery rule. *See Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 Tex. App. LEXIS 6689, at *28–29 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018, no pet.) (mem. op.) (stating that "a defendant pleading that a claim has been extinguished

8

by the statute of repose has the burden to prove when the transfer was or reasonably could have been discovered").

Third, we see that Stephanie and the others sua sponte raised the discovery rule in their motion for summary judgment and attempted to negate it. Because they unilaterally did so, we would be hard-pressed to say the topic was not already part of the debate before the trial court. That said, we turn to whether Stephanie and the others proved, as a matter of law, that limitations had expired.

The record contains evidence that Stephanie left the trucking operation in January 2015. Mary took her place, continued the operation, and conducted it in the same way as did her daughter. That is, Mary continued to collect the receivables earned through Brad's driving efforts, deposit them in an account she controlled, and pay her husband's living expenses until he died in October 2018. Application of simple math principles to this evidence reveals that Chapman's February 6, 2019 lawsuit fell within four years of some transfers, at the very least. That alone would preclude summary judgment on transfers occurring after February 6, 2015, irrespective of when Chapman may have gained knowledge about all others.

The same cannot necessarily be said about his suing Stephanie. More than four years lapsed between the time she left the trucking operation and Chapman sued her. Nevertheless, Chapman remained able to sue after the four-year period if 1) he did not know of the transfers and 2) acted within one year of when they were discovered or could reasonably have been discovered. Admittedly, Stephanie and the other movants attempted to prove he acted belatedly under that portion of the statute, as well. They did so by citing to evidence supposedly indicating he always knew Brad drove a truck. Those

9

citations referred to evidence purportedly found in 1) "Ex. A, 114:5–116:12 (deposition of George Chapman)"; 2) "Ex. A, 160:19 to 160:23" and 3) "Ex. A, 33:13–33:23; 34:17–34:21; 47:7–48:2." Each were references of excerpts from Chapman's deposition which Stephanie and the others allegedly attached to their summary judgment motion. Attempting to follow those citations, however, led us nowhere. That is, we could not find them within Exhibit A; the deposition pages mentioned were not part of that exhibit. Nor did we find them elsewhere in the evidence accompanying the motion or response thereto. Without the information contained on those deposition pages, one cannot legitimately hold that the movants carried their summary judgment burden. One cannot say they proved, as a matter of law, that Chapman failed to sue Stephanie and the others within a year of discovering the transfers or a year of when he reasonably could have.

In sum, the summary judgment record before us does not illustrate that Stephanie and the others proved, as a matter of law, limitations under both aspects of § 24.010(a)(1) lapsed before Chapman sued. So, they were not entitled to a summary judgment on their defense of limitations.

We sustain Chapman's issues, reverse the summary judgment, and remand the cause for further proceedings.


Brian Quinn
Chief Justice

10